UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARCUS CHANDLER, | ) | CASE No.: 4:10CV591 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | |
| DR. M. ESCOBAR, et al., | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| Defendants. | ) | |

This matter is before the Court on the motion for summary judgment filed on behalf of Defendants, Dr. M. Escobar, Chief Medical Officer at the Ohio State Penitentiary ("OSP"), and Mrs. Y. Thornton, former Health Care Administrator at OSP, on September 6, 2011 in this 42 U.S.C. §1983 action predicated upon the denial of medical care. ECF Dkt. #46. Plaintiff, Marcus Chandler, acting *pro se*, filed his opposition brief on September 20, 2011. ECF Dkt. #48. Defendants filed their reply brief on September 28, 2011. ECF Dkt. #50.

According to the complaint filed on March 19, 2010, Plaintiff suffers from degenerative disc disease, which causes severe lower back pain. ECF Dkt. #1. Plaintiff alleged that Defendants acted with deliberate indifference to his medical needs by denying him appropriate treatment. In his complaint, Plaintiff sought injunctive relief as well as compensatory and punitive damages.

A brief procedural history is informative. On August 9, 2010, Plaintiff filed a motion seeking a temporary restraining order and preliminary injunction. ECF Dkt #7. Plaintiff sought an order requiring Defendants to provide care by a "suitable doctor" and to carry out that "doctor's orders." *Id.* In denying both motions, the Court noted that Plaintiff had (1) been examined by at least two doctors, including a neurosurgeon; (2) been provided multiple dosages of pain medication on at least two occasions[1]; (3) undergone an MRI of his lower back; and, in response to the

---

[1]On December 8, 2009, Dr. Escobar prescribed Plaintiff "one cycle of [Prednisone]." ECF No. 7-1 at 1. On December 22, 2009, Dr. Escobar prescribed Plaintiff five pain pills. ECF No. 7-1 at 1. On April 21,

recommendation by the neurosurgeon; and (4) been seen by a physical therapist as recently as July 28, 2010. ECF Dkt. #13, pp. 61-62. Plaintiff filed a second motion for a temporary restraining order and preliminary injunction on on January 12, 2011. ECF Dkt. #28. The motion was summarily denied on March 7, 2011, based upon the analysis provided in the previous memorandum opinion and order. ECF Dkt. #36. Discovery was completed on July 15, 2011, and the motion for summary judgment was timely filed on September 6, 2011.

I.      STANDARD OF REVIEW AND GOVERNING LAW

Defendants have moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Summary judgment should be granted "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c).

This Court must view evidence in the light most favorable to the non-moving party to determine whether a genuine dispute of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir.2008). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Daugherty v. Sajar Plastics*, Inc., 544 F.3d 696, 702 (6th Cir.2008). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases, the Court

---

2010, Plaintiff was given "a shot and six pain pills." ECF No. 7-1 at 2 . On July 28, 2010, Plaintiff had undergone physical therapy. See non-document minutes for the telephone conference held on August 17, 2010, which was recorded using the Court's electronic recording system. ECF Dkt. #13, p. 62.

will decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

Upon filing a motion for summary judgment, the moving party has the initial burden of establishing that there are no genuine issues of material fact as to an essential element of the nonmoving party's claim. *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir.2009) (citation omitted); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 & n. 12 (6th Cir.1989). The moving party, however, is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the moving party relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In response, if the moving party establishes the absence of a genuine issue of material fact, to defeat summary judgment, the non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2); see also *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir.2009) (citation omitted). In this regard, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment"; rather, "Rule 56 allocates that duty to the opponent of the motion, who is required to point out the evidence, albeit evidence that is already in the record, that creates an issue of fact." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 379–80 (6th Cir.2007) (citation omitted); see also *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir.2008)(citation omitted). Moreover, the non-moving party must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586–87, 106 S.Ct. 1348; see also *Barr v. Lafon*, 538 F.3d 554, 574 (6th Cir.2008).

Accordingly, the ultimate inquiry is whether the record, as a whole, and upon viewing it in the light most favorable to the non-moving party, could lead a rational trier of fact to find in favor of the non-moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586–87, 106 S.Ct. 1348; see also

Anderson, 477 U.S. at 252, 106 S.Ct. 2505 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict—whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." (emphasis in original) (internal quotations omitted)).

Under 42 U.S.C. § 1983, an individual may bring a private right of action against anyone, who, under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution or conferred by federal statutes. *Blessing v. Freestone*, 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997);  *Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980).  It is well settled that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' ... proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The test for deliberate indifference underlying a 1983 claim has both an objective and subjective component. See *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir.2000).  The objective component requires the existence of a "sufficiently serious" medical need.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  The subjective element requires "an inmate to show that prison officials have 'a sufficiently culpable state of mind in denying medical care.'" *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir.2004) (quoting *Bargery*, 207 F.3d at 867).

Thus, a "prison official cannot be found liable under the Eighth Amendment ... unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.  An inmate must also prove that the official "disregard[ed] that risk by failing to take reasonable measures to abate it."  *Id.* at 847.

In evaluating a deliberate indifference claim, the Sixth Circuit distinguishes between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment. *Alspaugh v. McConnell,* 643 F.3d 162, 169 (6th Cir.2011), citing *Westlake v. Lucas*, 537 F.2d 857, 860, n. 5 (6th Cir.1976). Where a prisoner alleges only that the medical care he received was inadequate, "federal courts are generally reluctant

to second guess medical judgments." *Id.* However, it is possible for medical treatment to be "so woefully inadequate as to amount to no treatment at all." *Id.*

Moreover, ordinary medical malpractice does not satisfy the subjective component of the test. "[A] plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment. When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir.2001) (internal citations omitted). Officials have a sufficiently culpable state of mind when acting with "deliberate indifference" to a serious medical need. *Farmer*, 511 U.S. at 834. This requires the prison official to have acted with a state of mind similar to recklessness. *Id.* at 836.

II. FACTS

The following facts are taken from the affidavit of Mary Helen Lapushinsky, the current Health Care Administrator at OSP, unless otherwise noted. Affidavit of Mary Helen Lapushinsky ("Aff."), ¶2. The facts set forth in Lapushinsky's affidavit are based upon her review of Plaintiff's medical file. *Id.* Plaintiff concedes in his opposition brief that he "agree[s] with most (not all) of the facts but still believe[s] that those facts show that [his] rights were violated. ECF Dkt. #48, p. 195. He writes, "The one fact that is in dispute is if the medical care given was reasonably adequate." *Id.*

Plaintiff was admitted to the OSP infirmary for observation on December 9, 2009 after he was seen at Doctors' Sick Call earlier the previous day with complaints of immobility caused by lower back pain. Aff. at ¶5. He was given pain medication as well as Prednisone to reduce the suspected inflammation in his back. Defendant Escobar ordered an Electromyography test ("EMG") and a Magnetic Resonance Imaging test ("MRI") to determine the source of Plaintiff's back pain.

Plaintiff filed an informal complaint on December 20, 2009 seeking additional pain medication. ECF Dkt. #48-1, Informal Complaint Resolution Form, p. 197. Plaintiff was seen at Doctors' Sick Call two days later on December 22, 2009, as a follow-up for the treatment he received on December 9, 2009. Aff. at ¶5. He told Dr. Escobar that the Prednisone was helping

-5-

reduce his pain, but that he was still experiencing back pain. Dr. Escobar prescribed five Naprosyn pills for thirty days on December 22, 2009. Plaintiff filed a second information complaint on December 23, 2009, in which he claimed that (1) his pain is sufficiently severe to require additional pain medication; and (2) when he objected to Dr. Escobar's decision to prescribe 5 pain pills for thirty days, Dr. Escobar responded that if Plaintiff did not like it he could "take it to court." ECF Dkt. #48-1, Informal Complaint Resolution Form, p. 198.

An MRI was performed on December 30, 2009, and an EMG was conducted on January 6, 2010. Aff. at ¶6. The EMG was normal, but the MRI revealed degeneration in his L4-5 and L5-S1 discs. The L4-5 disc showed moderate facet arthropathy without any herniation or central canal stenosis present. The L5-S1 disc showed mild bulging with facet arthropathy and no evidence of focal disc herniation present.

On January 7, 2010, Plaintiff met with Dr. Escobar to review the results of his EMG. Aff. at ¶8. Plaintiff requested more pain medication, but Dr. Escobar refused because the tests had not revealed any nerve damage in his back. Dr. Escobar informed Plaintiff that he could purchase Motrin in the prison commissary. On January 7, 2010, Plaintiff filed his third informal complaint, in which he claimed that Dr. Escobar refused to provide to him additional pain medication. ECF Dkt. #48-1, Informal Complaint Resolution Form, p. 199.

On January 26, 2010, Plaintiff filed his fourth informal complaint, in which he requested a specialty consultation. ECF Dkt. #48-1, Informal Complaint Resolution Form, p. 200. He also asked not to be returned to Dr. Escobar's care. He submitted his fourth informal complaint on February 2, 2010, in which he again requested a specialty consultation. ECF Dkt. #48-1, Informal Complaint Resolution Form, p. 201. He stated that he was in severe pain and asked that the decisions of Dr. Escobar be overturned.

On April 7, 2010, Plaintiff experienced extreme pain in his lower back while playing basketball. Aff. at ¶9. He was taken to the infirmary and given an injection of Toradol, a prescription pain medication as well as a prescription for the drug in pill form for three days. At an appointment with Dr. Escobar on April 8, 2010, Plaintiff reported diminished pain. On April 21, 2010, nurses responded to a medical emergency on Plaintiff's cell block. Plaintiff claimed to be

suffering from back pain, but a medical evaluation revealed no symptoms. Plaintiff was offered ibuprofen, but he declined the drug. He submitted his sixth and seventh informal complaints on April 21, 2010, in which he claimed that no physical or visual examination was performed. ECF Dkt. #48-1, Informal Complaint Resolution Form, pp. 202-203. He complained of continuing severe back pain and requested treatment for his hand.

Similar events occurred on April 23, 2010 and April 26, 2010. On April 26, 2010, Plaintiff was given Naprosyn and he accepted it. Plaintiff was seen again by Dr. Escobar on April 28, 2010. Plaintiff complained of lower back pain when he exercised. Dr. Escobar told Plaintiff to stop exercising so intensely. Plaintiff filed his eighth informal complaints on May 15, 2010, in which he requested a medical evaluation of his functional limitations. ECF Dkt. #48-1, Informal Complaint Resolution Form, p. 204. Plaintiff accused Dr. Escobar of bias in his medical conclusions.

On June 4, 2010, Plaintiff was seen by a neurosurgeon, Dr. Carole Miller, via a teleconference, a procedure known as "Telemedicine." Dr. Carole Miller, evaluated Plaintiff based on the findings from the December 2009 MRI as well as several physical exercises she observed Plaintiff perform. Aff. at ¶10. Based on her observations, Dr. Miller diagnosed Plaintiff's condition as lumbar degenerative disc disease without radiculopathy with symptoms of chronic lower back pain. As a treatment program, Dr. Miller recommended Plaintiff be seen by a physical therapist and given an exercise program. Dr. Miller also recommended Plaintiff should be seen by a pain management clinic and possibly given injections.

On July 28, 2010, Plaintiff was seen by a physical therapist. Aff. at ¶11. The therapist provided electrical stimulation treatment for Plaintiff's back and gave Plaintiff an exercise routine to help with his lower back pain. On October 22, 2010, Plaintiff was seen at OSP's Pain Clinic. Aff. at ¶12. The Pain Clinic physician concurred with Dr. Miller's diagnosis and ordered a Lumbar Epidural Steroid Injection ("ESI") for Plaintiff which was administered that day. The physician at the Pin Clinic ordered a follow-up appointment in two weeks to determine Plaintiff's status.

On December 28, 2010, Plaintiff was admitted to the infirmary after he was found on the floor of his cell and claimed that he could not move. Aff. at ¶13. Plaintiff was given Motrin. He refused to cooperate with a vital sign assessment and was sent to the infirmary. He was a patient

-7-

in the infirmary from December 28, 2010 to January 3, 2011. His symptoms varied from the inability to move his legs, to partial movement, to movement without restriction. He was treated with Motrin. Plaintiff was seen again at the Pain Clinic on February 18, 2011. Aff. at ¶14. Based on the limited benefit from the treatment Plaintiff received during his last visit, the Pain Clinic recommend physical therapy for him and no follow-up with the Pain Clinic. Based on claims Plaintiff made to the Pain Clinic that the pain started in his lower back but would radiate down to his buttocks and legs, Dr. Escobar determined that Plaintiff was now suffering from radiculopathy. In response Dr. Escobar started Plaintiff on a course of the pain-killer Neurontin. The drug was administered to Plaintiff in progressively-increasing doses from February 25, 2011, thru April 15, 2011, and was administered with ibuprofen. Plaintiff's prescription for Neurontin was discontinued on April 15, 2011, after a blood test revealed no Neurontin was in his system, and Dr. Escobar suspected that Plaintiff was not taking his medication.

On November 16, 2010, Plaintiff was placed on the OSP's Chronic Care List. Aff. at ¶15. Every ninety days, Plaintiff meets with Dr. Escobar to discuss his ongoing treatment for the tremors in his right hand. Plaintiff is also given the opportunity to discuss other medical issues he is experiencing, including his back pain. Dr. Escobar appears to attribute Plaintiff's continuing back pain at least in some measure to Plaintiff's extensive exercise regimen.[2] Dr. Escobar has advised Plaintiff to stop doing 1000 crunches a day and reduce the number to 100 at most. Aff. at ¶16.

### III. LAW AND ANALYSIS

As a preliminary matter, Defendants argue that, because they were not put on notice that they were being sued in their individual capacities, Plaintiff's Eighth Amendment claims are against the State of Ohio, and are barred by the Eleventh Amendment. In *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the Supreme Court held that the Eleventh Amendment bars §1983 suits against a state and against state employees sued in their official capacities, unless the state has waived its immunity, or unless Congress has overridden the

---

[2] According to Lapushansky, Plaintiff has large biceps and well-defined abdominal muscles. However, Plaintiff contends that Lapushansky has never been shirtless in her presence, and, therefore, her statement was made "for the sole purpose to prejudice the court." ECF Dkt. #48, p. 196.

state's immunity under section 5 of the Fourteenth Amendment.

As a result, the Sixth Circuit requires §1983 plaintiffs to set forth clearly in their pleading that they are suing state defendants in their individual capacity for damages, not simply their capacity as state officials. *Shepherd v. Wellman*, 313 F.3d 963, 967 (6th Cir.2002)(quoting *Wells v. Brown*, 891 F.2d 591, 593 (6th Cir.1989)). The Sixth Circuit uses a "course of proceedings test" to determine whether the §1983 defendants received notice of plaintiff's intent to hold them liable in their individual capacities when no explicit statement appears in the proceedings. *Id.* at 967-68. In applying this test, the Sixth Circuit considers the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims for qualified immunity, to determine whether the defendant had actual knowledge of the potential for individual liability. *Moore v. City of Harriman*, 272 F.3d 769, 772, n.1 (6th Cir.2001)(*en banc*). The Sixth Circuit also considers whether subsequent pleadings put the defendant on notice of the capacity in which he or she is being sued. *Id.*

In *Shepherd*, the only indicator that the defendants had that they were being sued as individuals was the plaintiff's request for monetary, compensatory damages. See *Shepherd*, 313 F.3d at 969 ("Although *Moore* recognizes that the request for monetary damages is one factor that might place an individual on notice that he is being sued in his individual capacity, we do not read that case as holding that a request for money damages is alone sufficient to place a state official on notice that he is being sued in his individual capacity."). The *Shepherd* Court held that the plaintiff's claim for monetary damages was insufficient to place the defendants on notice that they were being sued in their individual capacity.

The *Shepherd* Court distinguished the facts in the case from the facts in *Moore*, where the caption on the complaint listed only the defendant police officers' names, not their official titles, and the complaint referred to the officers throughout as the "individual defendants." *Id.* at 773. The *Moore* complaint also stated that the officers acted "for themselves and for the City." *Id.* Moore sought compensatory damages and punitive damages against "each of the defendants." *Id.* Based on these aspects of the complaint, the *Moore* court concluded that the defendants were likely on notice that they were being sued as individuals. In addition, the *Moore* court found that the

plaintiff's response to the officers' motion to dismiss "clarified any remaining ambiguity" when it stated that the officers were "being sued in their individual capacities." *Id.*

Here, Defendants' names were listed in the complaint without their official titles. Moreover, Defendants asserted the defense of qualified immunity in their Answer. ECF Dkt. #14 at ¶8. The Sixth Circuit has recognized on numerous occasions that the assertion of a qualified immunity defense demonstrates notice of an individual capacity suit.  See *Garica v. Dykstra*, 260 Fed.Appx. 887, 895 (6th Cir.2008)("the demand for money damages, along with something more, here the qualified immunity defense asserted in the answer and amended answer, demonstrates that [the defendants] were aware of potential liability in their individual capacities"); *Lindsay v. Bogle*, 92 Fed.Appx. 165, 169 (6th Cir.2004)("the assertion of a qualified-immunity defense (even a contingent qualified-immunity defense) indicates that the defendants were aware they could be held personally liable"); *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir.1995) ("Because qualified immunity is available only in a personal capacity suit ... the assertion of that defense indicates that the defendant interpreted the plaintiff's action as being against him personally."). Accordingly, Defendants were on notice that they were being sued in their individual capacities and Plaintiff's claims are not barred by the Eleventh Amendment.

Turning to the substantive claims asserted in this case, Defendants concede that Plaintiff has a serious medical need, but they argue that they were not deliberately indifferent to Plaintiff's medical need.  Defendants write:

> When Plaintiff initially complained of his lower back problems, Dr. Escobar ordered tests and prescribed steroids and pain medication to help alleviate the symptoms. (Lapushansky Affidavit at ¶5). During a follow-up visit, the doctor evaluated the status of Plaintiff's condition and provided what he believed to be the appropriate amount of pain medication. Id. at ¶7. When Plaintiff met with the doctor to go over the results of his EMG, Dr. Escobar refused to provide him with more prescription medication because he did not believe it was necessary and instructed Plaintiff where he could procure over-the-counter medication. Id. at ¶8.
>
> In all of Plaintiff's subsequent encounters with the prison's clinic, he was provided with medical treatment for his complaints, including pain medication, which the medical staff thought were appropriate for his symptoms. Id. at ¶¶ 7, 13, 15 and 16. Following the results of his MRI and EMG, Plaintiff was seen by a neurosurgeon. Id. at ¶10. The neurosurgeon evaluated Plaintiff and recommended treatment and evaluation by a physical therapist and a pain management clinic. Id. Plaintiff was evaluated and treated by a physical therapist and a pain management clinic. Id. at ¶¶ 11, 12 and 14.

-10-

ECF Dkt. #46, pp. 184-85. Defendants contend that ample medical care was provided to Plaintiff, and, therefore, his Eighth Amendment claims do not have merit.

The facts in this case are analogous to the facts in the watershed case of *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In *Estelle*, a *pro se* prisoner filed a complaint against various prison officials, alleging that medical personnel were deliberately indifferent to his medical needs by failing to use additional diagnostic techniques in treating his back pain. *Id.* at 107, 97 S.Ct. 285. Prison officials had seen the plaintiff on seventeen occasions spanning a three month period, ultimately recommending bed rest, muscle relaxants, and pain relievers as treatment. *Id.* In response to the plaintiff's contention that the doctors should have done more by the way of diagnosis and treatment, including an X-ray, the Supreme Court held that "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Id.* at 106, 97 S.Ct. 285. Plaintiff's claim is predicated upon Dr. Escobar's failure to timely provide requested medical care, or provide specific dosages of medication. As previously stated, where a prisoner alleges only that the medical care he received was inadequate, "federal courts are generally reluctant to second guess medical judgments." *Alspaugh, supra,* at 169 citing *Westlake, supra,* at n. 5. Accordingly, Plaintiff's Eighth Amendment claim must fail.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. ECF Dkt. #46. This matter is DISMISSED with prejudice.

IT IS SO ORDERED.


DATE: October 20, 2011                    */s/  George J. Limbert*
                                          GEORGE J. LIMBERT
                                          UNITED STATES MAGISTRATE JUDGE